J. MICHAEL FARRELL, ESQUIRE
FARRELL DUFFY
718 ARCH STREET
SUITE 402N
PHILADELPHIA, PA 19106
(215) 925-1105
(609) 937-8836
mike@farrellduffy.com



### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | Criminal No.  15-80013-TP-Middlebrooks |
| V. | : | |
| | : | |
| H. JACK MILLER | : | |
| | : | |

## MOTION FOR EARLY TERMINATION OF PROBATION

NOW COMES, Defendant, H. Jack Miller, by J. Michael Farrell, Esquire, his attorney, and moves this Court for early termination of probation, and in support thereof states as follows:

1.  On October 7, 2013, Defendant entered a guilty plea to willful failure to maintain an effective anti-money laundering program and willful failure to file a suspicious activity report in violation of Title 31 Sections 5318(h) and 5322(a) and Title 31 Sections 5318(g) and 5322(a), respectively.

2.  On July 1, 2014, the Defendant was sentenced to probation for a term of three (3) years.  In addition, the Defendant was to pay a special assessment of $200 and a fine in the amount of $5,000.00.  See Judgement of Sentence attached hereto as Exhibit "A."

3.  The Defendant fully satisfied his special assessment and fine in a timely manner. See copy of the Praecipe to Satisfy Financial Judgment attached hereto as Exhibit "B".

4.  The Defendant's probation was transferred from the U.S. District Court for the Eastern District of Pennsylvania to the U.S. District Court for the Southern District of Florida.

5.  The Defendant, in all respects, has fully complied with his probation without incident.

6.  The Defendant has now completed more than one (1) year of his probation.

7.  My client has suffered an avalanche of additional punishment in the form of collateral consequences from his instant conviction which will be further outlined, *supra*.

8.  As the Court is aware, Gelt Financial, Inc. and Gelt Properties, LLC had sought protection under Chapter 11 of the Bankruptcy Code.  They are companies that the Defendant founded in February of 1989 and was the majority owner.  He served as President and CEO and shepherded the companies through success and the challenges of the bankruptcy process to survive, subsequent to our nation's economic downfall.

9.  When the Bankruptcy Plan, satisfying all creditors dollar for dollar, was about to be approved by the Bankruptcy Judge, the U.S. Trustee overseeing the case, an employee of the Department of Justice, required that Defendant resign from being an officer as well as a board member due to the instant plea.

10.  For over 20 years, the Defendant loved and worked day and night for the companies and, as a result of the instant conviction, can no longer participate in decision-making.  In addition, it should be noted that his resignation was required after he agreed to be a personal guarantor on about a $15,000,000.00 debt.  Therefore, the Defendant is personal responsible for the debt but, because of the instant conviction, can have no participation in the business decision-making.

11.  Moreover, without warning, on July 8, 2014, PNC Bank, a bank that the Defendant's companies had been dealing with for over five (5) years sent certified letters indicating that,

because Defendant was a signer on the accounts and in light of the instant conviction, the bank was giving the companies thirty days to close them. This included Defendant's personal accounts. See copies of said letters attached hereto as Exhibit "C". Contact was made with the bank, but they indicated that they could not provide any information.

12. Additionally, on April 27, 2015, Santander Bank, with whom the companies also had accounts, sent similar correspondence requiring the closing of accounts on which Defendant was a signer. See copies of those letters attached hereto as Exhibit "D".

13. All of the accounts were in compliance and had performed perfectly. On most of the companies, the Defendant was one (1) of three (3) signers as well the managing member or owner. The banking relationships of these companies are complex. For example, the companies use an Automatic Clearing House ("ACH") for both tenants' and borrowers' accounts for the purpose of making payments to banks and other vendors through automatic electronic payments. Suffice it to say, setting up new accounts would be an extraordinary nightmare that would take months and would be extremely costly. The ultimatum gave the Defendant no choice but to resign his positions in order that the companies could maintain their banking relationships.

14. Further, 1265 Industrial Boulevard, LLC is a company that the Defendant started and which owns two (2) commercial properties. The Defendant was its managing member, guarantor of its debt, and the majority owner through Gelt Holdings, Inc. As a result of the above-described banking situations, the Defendant was forced to resign as a member of management, again being responsible for debt but having no participation in management.

15. Moreover, Westerly Hills Shopping Center is a partnership that owns a 93,000 square foot retail center in Charlotte, North Carolina. The Defendant is a managing member of this partnership as well as through Gelt Holdings, Inc., its majority owner. It was necessary to

refinance the property so the LLC applied and was approved for a loan with CitiBank. On the eve of closing, CitiBank informed that they would not do the loan if the Defendant remained a managing member of the LLC due to his guilty plea in the instant matter. Again, the Defendant was forced to resign from the LLC, surrendering to at least one (1) of the partners greater interest, control and leverage than said partner would otherwise have had but for this ultimatum.

16. In summary, the Defendant has been locked out of America's financial system both as a depositor, borrower and business manager. It is difficult to imagine how the Defendant whose lifelong vocation has been as a businessman can survive or do any productive work in the future.

17. The above-described collateral consequences of the instant plea have been brought to the attention of the Court and it is requested that the Court consider them for the full picture of the punishment which the Defendant experienced as a result of this instant conviction.

18. To further assist the Court, a copy of the sentencing transcript has been attached hereto as Exhibit "E".

19. The Defendant has fully satisfied all of his economic obligation under the sentence and has been an exemplary probationer.

20. On September 17, 2014, Judge Savage executed an order requesting acceptance of the transfer of jurisdiction and order accepting jurisdiction effective date February 18, 2015. See attached as Exhibit "F."

21. On July 23, 2015, the Defendant filed a Motion for Early Termination of Probation in the United States District Court for the Eastern District of Pennsylvania. See copy of said motion without exhibits attached hereto as Exhibit "G."

22.  On July 29, 2015, Judge Savage issued an Order transferring the Defendant's Motion for Early Termination of Probation to the Southern District of Florida and Judge Middlebrooks. See Order attached hereto as Exhibit "H."

WHEREFORE, for the foregoing reasons, it is requested that this Court consider and order early termination of Defendant's probation forthwith.

Respectfully submitted,

J. MICHAEL FARRELL, ESQUIRE
Attorney for Defendant, H. Jack Miller

Dated: 1/12/16

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **V.** | : | **Criminal No.  15-80013-TP-Middlebrooks** |
| | : | |
| **H. JACK MILLER** | : | |
| | : | |

### ORDER

THIS MATTER having been presented to the Court by Motion for Early Termination of Probation by J. Michael Farrell, Esquire, attorney for the Defendant, and the Government having been represented by the United States Attorney's Office for the Southern District of Florida, and for good cause shown;

IT IS on this _____ day of _____, 2016 HEREBY ORDERED and DECREED that Defendant's Motion for Early Termination of Probation is GRANTED.

BY THE COURT:

_____
Donald M. Middlebrooks, U.S.D.C.J.

# EXHIBIT A

Case 2:13-cr-00445-TJS    Document 15    Filed 07/02/14    Page 1 of 5

◯AO 245B    (Rev. 06/05) Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT

| Eastern | District of | Pennsylvania |

| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |
| v. | |
| H. JACK MILLER | |

**FILED**

JUL 0 2 2014

MICHAEL E. KUNZ, Clerk
By_____Dep. Clerk Michael Farrell, Esquire
Defendant's Attorney

Case Number:    DPAE2:13CR000445-001

USM Number:    #70720-066

Michael Farrell, Esquire
Defendant's Attorney

## THE DEFENDANT:

X pleaded guilty to count(s)    One and Two of an Information.

☐ pleaded nolo contendere to count(s) _____
which was accepted by the court.

☐ was found guilty on count(s) _____
after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 31:5318(h) and 5322(a) | Willful failure to maintain an effective anti-money laundering program. | 06/30/2011 | 1 |
| 31:5318(g) and 5322(a) | Willful failure to file suspicious activity report. | 03/25/2010 | 2 |

The defendant is sentenced as provided in pages 2 through ___5___ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☐ Count(s) _____    ☐ is    ☐ are    dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

July 1, 2014
Date of Imposition of Judgment

Signature of Judge

Timothy J. Savage, United States District Judge
Name and Title of Judge

July 1, 2014
Date

cc: (2) Jacqueline Widmaier, Probation
U.S. Marshal
J. Michael Farrell, Esq.
Terri Marinari, AUSA
Pretrial
Fiscal
FLU

Case 2:13-cr-00445-TJS Document 20 Filed 07/23/15 Page 3 of 5
Case 2:13-cr-00445-TJS Document 19 Docket 01/19/2016 Page 9 of 71

Case 2:13-cr-00445-TJS   Document 15   Filed 07/02/14   Page 2 of 5

AO 245B   (Rev. 06/05) Judgment in a Criminal Case
Sheet 4—Probation

Judgment—Page __2__ of __5__

DEFENDANT:        H. Jack Miller
CASE NUMBER:      CR. 13-445

# PROBATION

The defendant is hereby sentenced to probation for a term of :
three (3) years.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of placement on probation and at least two periodic drug tests thereafter, as determined by the court.

☐   The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. (Check, if applicable.)

☐   The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. (Check, if applicable.)

☐   The defendant shall cooperate in the collection of DNA as directed by the probation officer. (Check, if applicable.)

☐   The defendant shall register with the state sex offender registration agency in the state where the defendant resides, works, or is a student, as directed by the probation officer. (Check, if applicable.)

☐   The defendant shall participate in an approved program for domestic violence. (Check, if applicable.)

If this judgment imposes a fine or restitution, it is a condition of probation that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1)   the defendant shall not leave the judicial district without the permission of the court or probation officer;

2)   the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;

3)   the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4)   the defendant shall support his or her dependents and meet other family responsibilities;

5)   the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6)   the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7)   the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8)   the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9)   the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10)  the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11)  the defendant shall notify the probation officer within seventy-two hours of being arrested by a law enforcement officer;

12)  the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

13)  as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

| | Judgment—Page | 3 | of | 5 |
|---|---|---|---|---|

DEFENDANT:        H. Jack Miller
CASE NUMBER:      CR. 13-445

## ADDITIONAL PROBATION TERMS

1. The defendant shall submit to one drug urinalysis within 15 days after being placed on supervision and at least two periodic tests to be performed at the time fixed by the Probation Office.

2. The defendant shall pay to the United States a special assessment of $200.00 which shall be due immediately.

3. The defendant shall pay a fine in the amount of $5,000.00 within ten (10) days.

AO 245B    (Rev. 06/05) Judgment in a Criminal Case
Sheet 5 — Criminal Monetary Penalties

Judgment — Page ___4___ of ___5___

DEFENDANT:          H. Jack Miller
CASE NUMBER:        CR. 13-446

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

|            | Assessment    | Fine          | Restitution   |
|------------|---------------|---------------|---------------|
| **TOTALS** | $ 200.00      | $ 5,000.00    | $ 0.          |

☐ The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case* (AO 245C) will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss* | Restitution Ordered | Priority or Percentage |
|---------------|-------------|---------------------|------------------------|
|               |             |                     |                        |

| **TOTALS** | $ _____ 0 | $_____ 0 |  |

☐ Restitution amount ordered pursuant to plea agreement  $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

X The court determined that the defendant does not have the ability to pay interest and it is ordered that:

   X  the interest requirement is waived for the    X fine  ☐ restitution.

   ☐ the interest requirement for the    ☐ fine  ☐ restitution is modified as follows:

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

# EXHIBIT B

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA                    :

           **v.**                           :    Criminal No. ~~13-CR-455-01~~

                                          13-CR-445-1

H. JACK MILLER                              :

## PRAECIPE TO SATISFY FINANCIAL JUDGMENT

TO THE CLERK OF THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA AT PHILADELPHIA:

    Please mark as satisfied the criminal monetary penalties portion of the criminal

judgment entered in the above-captioned case.  This Praecipe applies only to any special

assessment, restitution, and criminal fine obligation entered against the above-named

defendant.

                                    ZANE DAVID MEMEGER
                                    United States Attorney

                                    JOSEPH F. MINNI
                                    Assistant United States Attorney
                                    Pennsylvania Bar Id. No. 53241
                                    615 Chestnut Street
                                    Suite 1250
                                    Philadelphia, PA 19106-4476
                                    (215) 861-8200

Date:    12/31/14

**EXHIBIT C**

**PNCBANK**

July 8, 2014

Real Estate Management Advisors Llc
2755 Philmont Ave Ste 130
Huntingdon Valley, PA 19006-5321

RE: Account Ending 2732

Dear Real Estate Management Advisors Llc:

Please be advised that PNC Bank closed the above referenced account on July 8, 2014.

When all of the funds deposited into the account have been collected, we will draw a cashier's check for the balance in the account and mail it to you.

Any transactions presented to your account will be returned. Please destroy all unused checks, withdrawal/deposit tickets, and any debit card accessing the account.

Sincerely,

DRU - Positive Balance Account Closure
PNC Bank/Member FDIC
1-855-762-6356
Monday through Friday, 9:00 a.m. to 6:00 p.m., Eastern Time
Ref #: 214189004212

A member of The PNC Financial Services Group
500 West Jefferson Street Louisville Kentucky 40202

# ⬢ PNCBANK

July 10, 2014

Real Estate Management Advisors Llc
2755 Philmont Ave Ste 130
Huntingdon Valley, PA 19006-5321


RE:  Account Ending 2743

Dear Real Estate Management Advisors Llc:

Please be advised that PNC Bank closed the above referenced account on 07/10/2014.

When all of the funds deposited into the account have been collected, we will draw a cashier's check for the balance in the account and mail it to you.

Any transactions presented to your account will be returned. Please destroy all unused checks, withdrawal/deposit tickets, and any debit card accessing the account.

Sincerely,

DRU - Positive Balance Account Closure
PNC Bank/Member FDIC
1-855-762-6356
Monday through Friday, 9:00 a.m. to 6:00 p.m., Eastern Time
Ref #: 214191007256

# PNC BANK

July 8, 2014

Real Estate Management Advisors Llc
2755 Philmont Ave Ste 130
Huntingdon Valley, PA 19006-5321

RE: Account Ending 2778

Dear Real Estate Management Advisors Llc:

Please be advised that PNC Bank closed the above referenced account on July 8, 2014.

When all of the funds deposited into the account have been collected, we will draw a cashier's check for the balance in the account and mail it to you.

Any transactions presented to your account will be returned. Please destroy all unused checks, withdrawal/deposit tickets, and any debit card accessing the account.

Sincerely,

DRU - Positive Balance Account Closure
PNC Bank/Member FDIC
1-855-762-6356
Monday through Friday, 9:00 a.m. to 6:00 p.m., Eastern Time
Ref #: 214189004105

A member of The PNC Financial Services Group
500 West Jefferson Street Louisville Kentucky 40202

# ⊗PNCBANK

July 8, 2014

Real Estate Management Advisors Llc
2755 Philmont Ave Ste 130
Huntingdon Valley, PA 19006-5321

RE:  Account Ending 2786

Dear Real Estate Management Advisors Llc:

Please be advised that PNC Bank closed the above referenced account on July 8, 2014.

When all of the funds deposited into the account have been collected, we will draw a cashier's check for the balance in the account and mail it to you.

Any transactions presented to your account will be returned. Please destroy all unused checks, withdrawal/deposit tickets, and any debit card accessing the account.

Sincerely,

DRU - Positive Balance Account Closure
PNC Bank/Member FDIC
1-855-762-6356
Monday through Friday, 9:00 a.m. to 6:00 p.m., Eastern Time
Ref #: 214189004163

# EXHIBIT D



April 27, 2015

RICHBORO- GELT PARTNERS LLC
1001 W CYPRESS CREEK RD STE 406
FORT LAUDERDALE FL 33309

RE: Account (s) Ending in 1430, 3894, 2917

Dear Santander Customer,

Please be advised that a decision has been made by Santander Bank to close your accounts.

You will have thirty (30) days from the date of this letter to close your accounts. If your accounts are not closed within the prescribed time frame, the Bank will close your accounts. Please do not make any further deposits, nor would we recommend issuing additional checks. If you have direct deposit or electronic payments, you should notify the company that makes payments to you or electronically debits these accounts that these accounts are closing.

Since we realize that some items may remain outstanding, your checks and other payment orders will continue to be honored, providing sufficient funds are available, up to the thirtieth (30th) day from the date indicated at the top of this letter. Any funds remaining in the accounts after all deposits have been collected will be forwarded in the form of an Official Check.

If any accounts are opened or identified post notification of this letter, such accounts will be covered by this correspondence and will be closed with no additional advanced notice.

Thank you for your understanding.

Very truly yours,

Michael R. Goulet
Commercial Banking

75 State Street, Boston, MA 02109  Tel: (617) 646-2513



April 27, 2015

HUNTINGDON VALLEY OFFICE CENTER LLC
1001 W CYPRESS CREEK RD STE 406
FORT LAUDERDALE FL 33309

RE: Account (s) Ending in 1449, 3908, 2925

Dear Santander Customer,

Please be advised that a decision has been made by Santander Bank to close your accounts.

You will have thirty (30) days from the date of this letter to close your accounts. If your accounts are not closed within the prescribed time frame, the Bank will close your accounts. Please do not make any further deposits, nor would we recommend issuing additional checks. If you have direct deposit or electronic payments, you should notify the company that makes payments to you or electronically debits these accounts that these accounts are closing.

Since we realize that some items may remain outstanding, your checks and other payment orders will continue to be honored, providing sufficient funds are available, up to the thirtieth (30th) day from the date indicated at the top of this letter. Any funds remaining in the accounts after all deposits have been collected will be forwarded in the form of an Official Check.

If any accounts are opened or identified post notification of this letter, such accounts will be covered by this correspondence and will be closed with no additional advanced notice.

Thank you for your understanding.

Very truly yours,

Michael R. Goulet
Commercial Banking



April 27, 2015

HJM REAL ESTATE LLC
1001 W CYPRESS CREEK RD STE 406
FORT LAUDERDALE FL 33309

RE: Account Ending in 3878

Dear Santander Customer,

Please be advised that a decision has been made by Santander Bank to close your account.

You will have thirty (30) days from the date of this letter to close your account. If your account is not closed within the prescribed time frame, the Bank will close your account. Please do not make any further deposits, nor would we recommend issuing additional checks. If you have direct deposit or electronic payments, you should notify the company that makes payments to you or electronically debits this account that this account is closing.

Since we realize that some items may remain outstanding, your checks and other payment orders will continue to be honored, providing sufficient funds are available, up to the thirtieth (30th) day from the date indicated at the top of this letter. Any funds remaining in the account after all deposits have been collected will be forwarded in the form of an Official Check.

If any accounts are opened or identified post notification of this letter, such accounts will be covered by this correspondence and will be closed with no additional advanced notice.

Thank you for your understanding.

Very truly yours,

Michael R. Goulet
Commercial Banking

Issuing including Santander Santander Bank, N.A. is a Member FDIC and a wholly owned subsidiary of Banco Santander, S.A. ©2015 Santander Bank, N.A. Santander and its logo are registered trademarks of Banco Santander, S.A. or its affiliates or subsidiaries in the United States and other countries





April 27, 2015

WESTERLY HILLS CENTER PARTNERS LLC
1001 W CYPRESS CREEK RD STE 406
FORT LAUDERDALE FL 33309

RE:  Account (s) Ending in 6787, 6795, 7723

Dear Santander Customer,

Please be advised that a decision has been made by Santander Bank to close your accounts.

You will have thirty (30) days from the date of this letter to close your accounts. If your accounts are not closed within the prescribed time frame, the Bank will close your accounts. Please do not make any further deposits, nor would we recommend issuing additional checks. If you have direct deposit or electronic payments, you should notify the company that makes payments to you or electronically debits these accounts that these accounts are closing.

Since we realize that some items may remain outstanding, your checks and other payment orders will continue to be honored, providing sufficient funds are available, up to the thirtieth (30th) day from the date indicated at the top of this letter. Any funds remaining in the accounts after all deposits have been collected will be forwarded in the form of an Official Check.

If any accounts are opened or identified post notification of this letter, such accounts will be covered by this correspondence and will be closed with no additional advanced notice.

Thank you for your understanding.

Very truly yours,

Michael R. Goulet
Commercial Banking

75 State Street, Boston, MA 02109  Tel: (617) 646-2513



April 27, 2015

CRESCENT BUSINESS CENTER LLC
1001 W CYPRESS CREEK RD STE 406
FORT LAUDERDALE FL 33309

RE:   Account (s) Ending in 5527, 8731

Dear Santander Customer,

Please be advised that a decision has been made by Santander Bank to close your accounts.

You will have thirty (30) days from the date of this letter to close your accounts. If your accounts are not closed within the prescribed time frame, the Bank will close your accounts. Please do not make any further deposits, nor would we recommend issuing additional checks. If you have direct deposit or electronic payments, you should notify the company that makes payments to you or electronically debits these accounts that these accounts are closing.

Since we realize that some items may remain outstanding, your checks and other payment orders will continue to be honored, providing sufficient funds are available, up to the thirtieth (30th) day from the date indicated at the top of this letter.  Any funds remaining in the accounts after all deposits have been collected will be forwarded in the form of an Official Check.

If any accounts are opened or identified post notification of this letter, such accounts will be covered by this correspondence and will be closed with no additional advanced notice.

Thank you for your understanding.


Very truly yours,

Michael R. Goulet
Commercial Banking

Banco Santander, N.A., Santander and its logo are registered trademarks of Banco Santander, S.A., or its affiliates or subsidiaries in the United States and other countries. Banco Santander, N.A. is a Member FDIC and a wholly owned subsidiary of Banco Santander, S.A. ©2015



April 27, 2015

GFCIB AND ADVISORS LLC
1001 W CYPRESS CREEK RD STE 406
FORT LAUDERDALE FL 33309

RE: Account Ending in 0998

Dear Santander Customer,

Please be advised that a decision has been made by Santander Bank to close your account.

You will have thirty (30) days from the date of this letter to close your account. If your account is not closed within the prescribed time frame, the Bank will close your account. Please do not make any further deposits, nor would we recommend issuing additional checks. If you have direct deposit or electronic payments, you should notify the company that makes payments to you or electronically debits this account that this account is closing.

Since we realize that some items may remain outstanding, your checks and other payment orders will continue to be honored, providing sufficient funds are available, up to the thirtieth (30th) day from the date indicated at the top of this letter. Any funds remaining in the account after all deposits have been collected will be forwarded in the form of an Official Check.

If any accounts are opened or identified post notification of this letter, such accounts will be covered by this correspondence and will be closed with no additional advanced notice.

Thank you for your understanding.

Very truly yours,

Michael R. Goulet
Commercial Banking

Equal Housing Lender. Santander Bank, N.A. is a Member FDIC and is a wholly owned subsidiary of Banco Santander, S.A. ©2015 Santander Bank, N.A. Santander and its logo are registered trademarks of Banco Santander, S.A. or its affiliates or subsidiaries in the United States and other countries



April 27, 2015

MILLER BOYS PROPERTIES LLC
1001 W CYPRESS CREEK RD STE 406
FORT LAUDERDALE FL 33309

RE: Account Ending in 3851

Dear Santander Customer,

Please be advised that a decision has been made by Santander Bank to close your account.

You will have thirty (30) days from the date of this letter to close your account. If your account is not closed within the prescribed time frame, the Bank will close your account. Please do not make any further deposits, nor would we recommend issuing additional checks. If you have direct deposit or electronic payments, you should notify the company that makes payments to you or electronically debits this account that this account is closing.

Since we realize that some items may remain outstanding, your checks and other payment orders will continue to be honored, providing sufficient funds are available, up to the thirtieth (30th) day from the date indicated at the top of this letter. Any funds remaining in the account after all deposits have been collected will be forwarded in the form of an Official Check.

If any accounts are opened or identified post notification of this letter, such accounts will be covered by this correspondence and will be closed with no additional advanced notice.

Thank you for your understanding.

Very truly yours,

Michael R. Goulet
Commercial Banking

Equal Housing Lender, Santander Bank, Santander Bank, N.A. is a Member FDIC and a wholly owned subsidiary of Banco Santander, S.A., or its affiliates or subsidiaries in the United States and other countries. ©2015 Santander Bank, N.A. Santander and its logo are registered trademarks of Banco Santander, S.A.,

75 State Street, Boston, MA 02109 Tel: (617) 646-2513



April 27, 2015

FRIENDS LANE LLC
1001 W CYPRESS CREEK RD STE 406
FORT LAUDERDALE FL 33309

RE:  Account (s) Ending in 3886, 2933, 9022

Dear Santander Customer,

Please be advised that a decision has been made by Santander Bank to close your accounts.

You will have thirty (30) days from the date of this letter to close your accounts. If your accounts are not closed within the prescribed time frame, the Bank will close your accounts. Please do not make any further deposits, nor would we recommend issuing additional checks. If you have direct deposit or electronic payments, you should notify the company that makes payments to you or electronically debits these accounts that these accounts are closing.

Since we realize that some items may remain outstanding, your checks and other payment orders will continue to be honored, providing sufficient funds are available, up to the thirtieth (30th) day from the date indicated at the top of this letter.  Any funds remaining in the accounts after all deposits have been collected will be forwarded in the form of an Official Check.

If any accounts are opened or identified post notification of this letter, such accounts will be covered by this correspondence and will be closed with no additional advanced notice.

Thank you for your understanding.

Very truly yours,

Michael R. Goulet
Commercial Banking

75 State Street, Boston, MA 02109  Tel: (617) 646-2513

**EXHIBIT E**

```
 1                IN THE UNITED STATES DISTRICT COURT

 2           FOR THE EASTERN DISTRICT OF PENNSYLVANIA

 3

 4     UNITED STATES OF AMERICA        :   CRIMINAL NUMBER

 5              v.

 6

 7

 8     H. JACK MILLER                  :   13-445
       DEFENDANT

 9                            WEDNESDAY, 7-9-14
                              COURTROOM 9-A
10                            PHILADELPHIA, PA 19106

11     ----------------------------------------------------
             BEFORE THE HONORABLE TIMOTHY J. SAVAGE, J.
12     ----------------------------------------------------
                            SENTENCING
13     ----------------------------------------------------

14     APPEARANCES:

15     TERRI A. MARINARI, ESQUIRE       FOR THE GOVERNMENT
       ASSISTANT UNITED STATES ATTORNEY
16     615 CHESTNUT STREET
       PHILADELPHIA, PA.  19106

17

18

19                      SUZANNE R. WHITE
                     OFFICIAL COURT REPORTER
20               FIRST FLOOR U. S. COURTHOUSE
                     601 MARKET STREET
21               PHILADELPHIA, PA 19106
                       (215)627-1882

22

23

       PROCEEDINGS RECORDED BY STENOTYPE-COMPUTER,
24     TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION

25
```

```
1        APPEARANCES:

2
         J. MICHAEL FARRELL, ESQUIRE        FOR THE DEFENDANT
3        718 ARCH STREET, SUITE 402 N       H. JACK MILLER
         PHILADELPHIA, PA 19103
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

```
1                    (THE CLERK OPENS COURT.)

2                    THE COURT:  THIS IS THE MATTER OF THE

3     UNITED STATES VERSUS A. JACK MILLER, CRIMINAL NUMBER

4     13-445.  ARE THE PARTIES READY TO PROCEED?

5                    MR. FARRELL:  YES, YOUR HONOR.

6                    MS. MARINARI:  YES, YOUR HONOR.

7     BY THE COURT:

8     Q.    MR. MILLER, HOW ARE YOU TODAY?

9     A.    AS GOOD AS CAN BE EXPECTED, YOUR HONOR.  THANK

10    YOU FOR ASKING.

11    Q.    DO YOU KNOW WHAT WE ARE GOING TO BE DOING?

12    A.    I BELIEVE SO.

13    Q.    TELL ME?

14    A.    I BELIEVE I'M GOING TO BE RECEIVING A SENTENCE

15    TODAY.

16    Q.    FOR WHAT?

17    A.    FOR THE CRIME THAT I PLED GUILTY OF.

18    Q.    IS THERE ANY REASON WE SHOULD NOT PROCEED?

19    A.    NO.

20                   THE COURT:  HAVE THE PARTIES RECEIVED

21    COPIES OF THE PRESENTENCE INVESTIGATION REPORT WITH ITS

22    REVISIONS AS OF JUNE 16, 2014?

23                   MR. FARRELL:  YES, YOUR HONOR.

24                   MS. MARINARI:  YES, I HAVE, YOUR HONOR.

25                   THE COURT:  DOES THE GOVERNMENT HAVE ANY
```

Case 2:13-cr-00445-TJS   Document 20-5   Filed 03/23/15   Page 13 of 30

4

```
1      OBJECTIONS?

2                    MS. MARINARI:  NO, YOUR HONOR, THE

3      GOVERNMENT HAS NO OBJECTIONS.

4      BY THE COURT:

5      Q.      MR. MILLER, DID YOU SEE THE PRESENTENCE

6      INVESTIGATION REPORT?

7      A.      YES, I DID, YOUR HONOR.

8      Q.      DID YOU READ IT?

9      A.      YES.

10     Q.      HOW MANY TIMES?

11     A.      A BUNCH.

12     Q.      OKAY.

13                   IS THERE ANYTHING IN THAT REPORT THAT YOU

14     BELIEVE IS INCORRECTLY STATED OR IS THERE ANYTHING IN

15     THAT REPORT THAT IS MISSING THAT MIGHT BE HELPFUL TO

16     YOU?

17     A.      CAN I ASK MY ATTORNEY A QUICK QUESTION?

18                   THE COURT:  SURE.

19                   MR. FARRELL:  JUDGE, IF I MIGHT.

20                   THE COURT:  HE WANTS TO ASK YOU A

21     QUESTION.

22                   MR. FARRELL:  YES, YOUR HONOR.

23                   THE DEFENDANT:  YOUR HONOR, I GAVE ALL MY

24     COMMENTS TO MY ATTORNEY UPON RECEIPT OF THE REPORT.

25     BY THE COURT:
```

Case 2:13-cr-00645-JS Document 20-2 Filed 1/25/16 Page 33 of 71
Case 3:15-cr-80013-DMM Document 21 Entered on FLSD Docket 01/19/2016 Page 33 of 71

5

1    Q.       DO YOU HAVE ANY CORRECTIONS THAT YOU WANT MADE

2    TO THE REPORT?

3    A.       I DON'T BELIEVE SO.

4    Q.       THERE IS NOTHING YOU WANT ADDED?

5    A.       NO.

6               THE COURT:  ALL RIGHT.

7               ARE THERE ANY OBJECTIONS, MR. FARRELL?

8               MR. FARRELL:  YOUR HONOR, I REQUEST THAT

9    BASED ON MY LETTER, JUDGE, WHICH FOLLOWED YOUR HONOR'S

10   RECEIPT TO EXCISE ALL FOOTNOTES AND THREE SENTENCES FROM

11   PARAGRAPH 39.

12             THE COURT:  WHAT DO YOU WANT TO TAKE OUT?

13             MR. FARRELL:  ALL THE FOOTNOTES, JUDGE,

14   AND THE LAST THREE SENTENCES OF PARAGRAPH 39 WHICH

15   PERTAINS TO ACCEPTANCE OF RESPONSIBILITY.  ESSENTIALLY,

16   JUDGE, WE WITHDREW ANY ADDITIONS, OBJECTIONS OR

17   CORRECTIONS WHICH I HAD ARTICULATED.

18             THE COURT:  WHY DO YOU WANT IT OUT?

19             MR. FARRELL:  WELL, JUDGE --

20             THE COURT:  ARE YOU CONTESTING THAT IT'S

21   AN ACCURATE STATEMENT?

22             MR. FARRELL:  JUDGE, MY CLIENT BELIEVES

23   TO THE BEST OF HIS KNOWLEDGE THAT THE CORRECTIONS WERE

24   AS ACCURATE AS HIS RECOLLECTION.  HOWEVER, JUDGE, THE

25   GOVERNMENT AS WELL AS THE PROBATION OFFICER HAD SOME

1    QUESTIONS AND FRANKLY, JUDGE, I BELIEVE IT WAS IN MY

2    CLIENT'S INTEREST TO ELIMINATE ANY QUESTIONS FOR THIS

3    PROCEEDING FOR YOUR HONOR.

4              THE COURT:  MAYBE YOU BETTER STATE THAT

5    AGAIN SO I CAN UNDERSTAND WHAT YOU JUST SAID.

6              MR. FARRELL:  YOUR HONOR, IF YOU RECALL,

7    AND I'M NOT SURE THAT IT EVEN CAME TO YOUR ATTENTION,

8    BUT THERE IS NO MATERIAL REQUEST FOR YOUR HONOR TO DO

9    ANY FACT FINDING WITH RESPECT TO STEP ONE.  ALL OF THE

10   ADDITIONS AND CORRECTIONS WERE ESSENTIALLY AS TO

11   PARTICULAR PHRASING WITH PARAGRAPHS.  HOWEVER, IN

12   PARAGRAPH 39, THE LAST THREE SENTENCES, THE PROBATION

13   OFFICER CALLED INTO QUESTION MY CLIENT'S PURE ACCEPTANCE

14   OF RESPONSIBILITY.  AND I WANTED TO ELIMINATE ANY

15   QUESTION IN THE COURT'S MIND THAT MY CLIENT IS

16   COMPLETELY AND WITHOUT RESERVATION ACCEPTING

17   RESPONSIBILITY.

18             THE COURT:  I GUESS I CAN DETERMINE THAT

19   WHEN I HEAR HIM, CAN'T I?

20             MR. FARRELL:  EXCUSE ME, YOUR HONOR?

21             THE COURT:  I MAY DETERMINE THAT WHEN I

22   HEAR HIM ON HIS ALLOCUTION.

23             MR. FARRELL:  YES, YOUR HONOR, OBVIOUSLY

24   THAT IS YOUR HONOR'S ROLE, INESCAPABLE, BUT MY ROLE,

25   JUDGE, WAS TO MAKE THE REQUEST THAT I DID.

Case 9:15-tp-80018-KAM JSDocument 21 Entered on FLSD Docket 01/13/2916   Page 35 of 71

7

```
 1                    THE COURT:  I AGREE WITH YOU THAT THE
 2    LAST SENTENCE IN PARAGRAPH 39 SHOULD BE STRICKEN.   DO
 3    YOU WANT TO LOOK AT IT?
 4                    MR. FARRELL:  I AM FAMILIAR WITH IT,
 5    JUDGE.  LET ME JUST TAKE ONE SECOND AND REFRESH MY
 6    RECOLLECTION.
 7                    YOUR HONOR, THAT WOULD SATISFY MY
 8    REQUEST.
 9                    THE COURT:  MS. MARINARI, DO YOU HAVE A
10    PROBLEM WITH THAT?
11                    MS. MARINARI:  NO, YOUR HONOR, BASED ON
12    THE FACT AS MR. FARRELL AND I DISCUSSED, HE IS
13    WITHDRAWING ALL HIS OBJECTIONS AND WHAT I CONSIDER TO BE
14    SOME OBJECTIONS THAT WERE NOT ACCURATE.  IF HE IS
15    WITHDRAWING THOSE, I HAVE NO PROBLEM WITH THAT SENTENCE
16    COMING OUT.
17                    THE COURT:  THAT IS A CONCLUSION FOR ME
18    TO MAKE, NOT FOR THE PROBATION OFFICER TO MAKE.
19                    MR. FARRELL:  I UNDERSTAND, YOUR HONOR.
20    I WANTED TO MAKE IT AS PLAIN AS I POSSIBLY COULD.
21                    THE COURT:  OKAY.  ANYTHING ELSE?
22                    MR. FARRELL:  YES, YOUR HONOR.  OBVIOUSLY
23    LESS IS MORE AND THAT PROMPTED MY REQUEST, BUT I STAND
24    BEFORE YOUR HONOR FRANKLY HONORED TO REPRESENT JACK
25    MILLER WHO IS REALLY --
```

```
 1                    THE COURT:  I'M NOT ASKING YOU TO GIVE ME

 2      COMMENTS ON SENTENCING.  ANYTHING MORE ON ANY

 3      OBJECTIONS, CORRECTIONS OR ADDITIONS?

 4                    MR. FARRELL:  ABSOLUTELY NOT, YOUR HONOR.

 5      AS TO STEP ONE, WE AGREE WITH THE ANALYSIS AND THE

 6      GUIDELINE RANGE.

 7                    THE COURT:  DO THE PARTIES AGREE THAT THE

 8      TOTAL OFFENSE LEVEL IS SIX AND THE CRIMINAL HISTORY

 9      CATEGORY IS ONE?

10                    MS. MARINARI:  YES, YOUR HONOR.

11                    MR. FARRELL:  WE DO, YES, YOUR HONOR.

12                    THE COURT:  DO THE PARTIES AGREE WITH

13      TOTAL OFFENSE LEVEL OF SIX AND CRIMINAL HISTORY CATEGORY

14      OF ONE, THAT THE CUSTODIAL GUIDELINE RANGE IS ZERO TO

15      SIX MONTHS, THAT THE SUPERVISED RELEASE RANGE IS ONE TO

16      THREE YEARS, THAT THE PROBATION RANGE IS ONE TO

17      FIVE YEARS AND THAT THE FINE RANGE IS $500 TO $5,000 AND

18      THAT THERE IS NO RESTITUTION?

19                    MS. MARINARI:  I AGREE.

20                    MR. FARRELL:  YES, YOUR HONOR.

21                    THE COURT:  I WILL HEAR THE GOVERNMENT ON

22      SENTENCING.

23                    MS. MARINARI:  YOUR HONOR, AS I STATED IN

24      THE SENTENCING MEMORANDUM, THE CONGRESS HAS SEEN FIT

25      OVER THE COURSE OF THE LAST FEW YEARS WITH THE
```

1    INCREASING THREATS TO THE NATION'S SECURITY TO INCREASE

2    THE RESPONSIBILITIES UPON BANKS AND INDIVIDUALS WHO RUN

3    AND CONTROL BANKS, WHO MANAGE BANKS, AND THAT IS REALLY

4    WHAT BRINGS US HERE IN THIS CASE TODAY.

5            THIS WAS -- PUBLIC SAVINGS BANK WAS A ONE

6    BRANCH BANK WITH A VERY CLOSELY HELD, A CLOSELY KNIT

7    MANAGEMENT.  THE DEFENDANT, JACK MILLER, WAS ESSENTIALLY

8    IN CHARGE AND IN CONTROL OF THAT BANK.  AND DURING THE

9    COURSE OF HIS MANAGING THAT BANK, THIS PARTICULAR BANK

10   TOOK ON A NUMBER OF HIGH RISK ACCOUNTS.  THEY WERE

11   VENEZUELAN AS WELL AS OTHER INTERNATIONAL ACCOUNTS AND

12   BY HIS OWN ADMISSION, THE MONEY FOR MONEY EXCHANGE IN

13   WHICH THERE IS A VERY HIGH RISK OF MONEY LAUNDERING.

14   AND THAT IS EXACTLY WHAT REALLY HAPPENED HERE.  HE MAY

15   NOT HAVE INTENDED THAT, BUT BECAUSE OF THE HIGH RISK,

16   OTHER INDIVIDUALS WERE AWARE OF THE FACT THAT THERE WAS

17   SOME LAX PRACTICES HERE WITH RESPECT TO LOOKING INTO THE

18   CUSTOMERS AND WHAT THEY WERE DOING AND IT ALLOWED

19   SOMETHING AS CHARGED IN THIS PARTICULAR INDICTMENT TO

20   HAPPEN.

21            SO WHILE THE GUIDELINES ARE RATHER

22   LIMITED AND WE DON'T DISAGREE WITH THOSE GUIDELINES, WE

23   WANT TO EXPRESS TO THE COURT THAT WE THINK THIS TYPE OF

24   CASE IS IMPORTANT.  CONGRESS HAS SEEN FIT TO INCREASE

25   THE RESPONSIBILITIES OF BANKS UNDER THE BANK SECRECY

10

1       ACT.  THAT IS THE PURPOSE OF THIS PROSECUTION.

2                     SO BASED ON WHAT WE CONSIDER TO BE THE

3       SERIOUSNESS OF THE OFFENSE, WE ARE ASKING FOR THE COURT

4       TO IMPOSE A SENTENCE WITHIN THE GUIDELINES AND ALSO

5       BASED ON THE CIRCUMSTANCES OF THE DEFENDANT'S FINANCIAL

6       CONDITION DURING THE COURSE OF THE CASE AND WE ARE

7       ASKING THE COURT TO IMPOSE A FINE OF AT THE HIGH END OF

8       THE RANGE, WHICH IS $5,000.

9                     THE COURT:  HOW MUCH MONEY WENT THROUGH

10      THESE HIGH RISK EXCHANGES?

11                    MS. MARINARI:  MILLIONS OF DOLLARS, YOUR

12      HONOR.

13                    THE COURT:  MAYBE A BILLION?

14                    MS. MARINARI:  I THINK IT MIGHT HAVE EVEN

15      BEEN OVER A BILLION.  AGAIN, YOUR HONOR, THAT IS JUST

16      THE WIRE TRANSFERS GOING BACK AND FORTH.  WE ARE NOT

17      SAYING THAT THOSE PARTICULAR ACCOUNTS --

18                    THE COURT:  OH, THAT IS MY NEXT QUESTION.

19      OF ALL THAT BILLIONS OF DOLLARS, ONLY $86,000 WAS

20      ATTRIBUTED TO MONEY LAUNDERING, CORRECT?

21                    MS. MARINARI:  THAT IS WHAT WE CHARGED,

22      YES, YOUR HONOR.

23                    THE COURT:  SO SOMETHING SLIPPED THROUGH

24      THE SCHEME THEY HAD, THE REGULATORY SCHEME THEY HAD IN

25      PLACE, WHICH YOUR POSITION IS IT'S JUST ABOUT NO SCHEME

1    IN PLACE.

2               MS. MARINARI:  THAT'S OUR POSITION.  AT

3    LEAST FOR THAT PERIOD OF TIME.  I MEAN EVENTUALLY I

4    THINK THEY WERE INCREASING THEIR VIGILANCE, BUT AT THE

5    TIME THAT THIS HAPPENED, THERE WAS ESSENTIALLY NO

6    SCREENING.

7               THE COURT:  SOMEWHAT ATTRIBUTABLE TO

8    MR. MILLER'S LACK OR REAL BANKING EXPERIENCE MAYBE?

9               MS. MARINARI:  I WOULD NOT DISAGREE WITH

10   THAT, JUDGE.

11              THE COURT:  MAYBE A LITTLE BIT IN OVER

12   HIS HEAD.

13              MS. MARINARI:  I THINK THE FACTS WOULD

14   PROBABLY SUPPORT THAT.

15              THE COURT:  HAD DONE SOME GREAT STUFF AS

16   AN INVESTMENT GUY AND NOW HE GETS INTO A BANKING

17   BUSINESS WHERE HE IS GOING TO BE A BANKER.  HE REALLY

18   WAS NOT EQUIPPED TO BE ONE, WAS HE?

19              MS. MARINARI:  I THINK THE FACTS WOULD

20   PROBABLY SUPPORT THAT AS WELL, JUDGE.

21              THE COURT:  CERTAINLY THE GOVERNMENT DOES

22   NOT THINK OR BELIEVE THAT HE KNEW THIS MONEY WAS BEING

23   LAUNDERED, CORRECT?

24              MS. MARINARI:  JUDGE, WE ARE NOT SAYING

25   THAT HE KNEW THAT THAT $86,000 IN PARTICULAR WAS

1    NARCOTICS MONEY.

2                    THE COURT:  ALL RIGHT.  THANK YOU.

3                    MS. MARINARI:  THANK YOU.

4                    THE COURT:  MR. FARRELL, YOUR TURN.

5                    MR. FARRELL:  THANK YOU, YOUR HONOR, GOOD

6    MORNING.  IT'S AN HONOR FRANKLY FOR ME TO REPRESENT JACK

7    MILLER.  HE IS A GOOD MAN WHO HAS ESSENTIALLY LIVED A

8    GOOD LIFE.  AND ONE CAN LIVE A LIFE AND DO THOUSANDS AND

9    THOUSANDS OF GOOD THINGS, BUT ONE MISTAKE THREATENS TO

10   OVERSHADOW THAT OTHERWISE EXEMPLARY LIFE.  AND THAT IS

11   ESSENTIALLY THE TASK THAT I FIND MYSELF BEFORE YOUR

12   HONOR.  IT IS OUR REQUEST, JUDGE, THAT A SENTENCE OF

13   PROBATION WOULD BE SUFFICIENT BUT NOT GREATER THAN

14   NECESSARY TO HONOR THE PURPOSES OF SENTENCING.

15                   AS WE HAVE ALREADY WENT THROUGH, THERE

16   ARE NO ISSUES AS TO STEP ONE, NONE AS TO STEP TWO AND

17   I'M MOVING NOW OF COURSE TO 3553 AND YOUR HONOR'S

18   ANALYSIS, SO I WOULD ASK YOU TO KEEP IN MIND AND TO

19   CONSIDER AS YOU CONSIDER THE PURPOSE OF SENTENCING.

20                   FIRST OF ALL, I WOULD INCORPORATE MY

21   SENTENCING MEMORANDUM WHICH, OF COURSE, INCLUDES 16

22   LETTERS THAT I THINK ULTIMATELY OUTLINE THE KIND OF LIFE

23   THAT MY CLIENT HAD.  HE HAS ELDERLY PARENTS WHO --

24                   THE COURT:  ALL OF WHICH I READ AND

25   CONSIDERED.

13

1            MR. FARRELL:   AND HE HAS ELDERLY PARENTS

2     THAT HE IS ESSENTIALLY THE PRIMARY CARETAKER OF.   HE IS

3     51 YEARS OLD, HE IS 27 YEARS MARRIED, A VERY HAPPY

4     MARRIAGE.   HE HAD NECK SURGERY, JUDGE, IN APRIL THAT HE

5     IS STILL RECOVERING FROM.   I BELIEVE IT'S TERRIBLY FAIR

6     THAT HE HAS HAD PHYSICAL MANIFESTATIONS OF THE

7     OVERWHELMING SHAME AND REMORSE AND DESTRUCTION OF A

8     REPUTATION WHICH HE HAS SPENT A LIFETIME BUILDING WHICH

9     HAS RESULTED IN PHYSICAL MANIFESTATIONS FOR WHICH HE HAS

10    HAD TREATMENT.

11            I THINK YOUR HONOR IS AWARE, THIS MAN HAS

12    HAD AN EXTENSIVE HISTORY OF PHILANTHROPY AND WAS

13    TREMENDOUSLY INVOLVED IN HIS PHILANTHROPY IN THE JEWISH

14    COMMUNITY WHICH QUITE FRANKLY, JUDGE, LED TO THIS

15    PROBLEM.   THE VENEZUELAN MONEY AND ULTIMATELY THE GROWTH

16    AND EXPLOSION OF THE USE OF PUBLIC SAVINGS WAS A RESULT

17    OF A SEMITIC COMMUNITY, A JEWISH COMMUNITY WHICH MY

18    CLIENT HAD COME IN CONTACT WITH AS A RESULT OF HIS

19    INTERNATIONAL PHILANTHROPY, AND THEY MADE THE DECISION

20    WHY SHOULD WE USE A BANK OTHER THAN JACK MILLER'S.   AND

21    AS A RESULT, AND I THINK YOUR HONOR HAS HIT THE NAIL ON

22    THE HEAD.   AND AGAIN, THIS WAS A MAN WHO COULD NOT SAY

23    NO.   AND HE WAS ASKED, FRANKLY, BY THE BOARD TO ASSUME

24    HIS POSITION WHICH I BELIEVE, JUDGE, WAS AN INCREDIBLE

25    STRETCH FOR HIM, DESPITE BUSINESS SKILLS AND SUCCESS,

1     AND FRANKLY, BANKING, AS I THINK THE GOVERNMENT PROPERLY

2     OUTLINED, THE CHALLENGES OF BANKING POST 9-11 ARE,

3     FRANKLY, DAUNTING, AND I THINK THE GOVERNMENT VERY

4     FAIRLY INDICATES THAT WE DON'T HAVE THE KIND OF SCIENTER

5     THAT ULTIMATELY THE COMMON LAW CONTEMPLATED.

6              THIS IS A CASE THAT INVOLVES WILLFUL

7     BLINDNESS WITH RESPECT TO THE STRUCTURE OF MONEY

8     LAUNDERING, PROTECTION THAT IS NEEDED.

9              I WOULD ASK YOU ALSO TO TAKE INTO

10    CONSIDERATION THOSE 16 LETTERS.  I BEGAN MY MEMO, JUDGE,

11    WITH THAT QUOTE FROM HIS SON WHICH BOY, IF ONE OF MY

12    SEVEN WOULD SAY THAT ABOUT ME, I WOULD ACTUALLY FEEL

13    PRETTY GOOD ABOUT IT.

14              JUDGE, I ALWAYS END, AND THERE ARE MANY

15    OTHER THINGS I CAN SAY, BUT I THINK THAT MY FEELING IS

16    IS THAT YOUR HONOR HAS SPENT TIME AND SEEN EVERYTHING

17    THAT IS IN THIS MEMO.  I ALWAYS END WITH ESSENTIALLY A

18    QUOTE FROM ROBERT KENNEDY IN WHICH HE TOLD US THAT FEW

19    WILL EVER HAVE THE GREATEST TO ACTUALLY BEND HISTORY,

20    BUT MR. KENNEDY WAS NOT TALKING ABOUT AN ARTICLE III

21    FEDERAL JUDGE.  JUDGE, YOU DO CHANGE HISTORY AND

22    SPECIFICALLY AND SOLEMNLY YOU CHANGE HISTORY EVERY TIME

23    THAT YOU SENTENCE AN INDIVIDUAL CO-CITIZEN.  HE WENT ON

24    TO SAY THAT EVEN THOUGH WE MAY NOT BE ABLE TO CHANGE

25    HISTORY, IN THOSE SMALL PORTIONS OF OUR ACTS, WE CAN

1   CHANGE EVENTS AND WRITE THE HISTORY OF A GENERATION.

2   AND QUITE FRANKLY, JUDGE, I BELIEVE THAT AS TO A FEDERAL

3   JUDGE IN SENTENCING CO-CITIZENS THAT YOUR INDIVIDUAL

4   SENTENCES WITH RESPECT TO CO-CITIZENS WRITE THE HISTORY

5   OF YOUR LEGACY AS A FEDERAL JUDGE.

6           I BELIEVE THIS IS A CASE QUITE FRANKLY

7   THAT IS VERY MUCH A 21ST CENTURY CASE.  THERE IS

8   INCREDIBLE DIALOGUE ABOUT THE POTENTIAL OF OVER

9   CRIMINALIZATION OF CONDUCT AND LABELING OF A MAN LIKE

10  JACK MILLER AS A FEDERAL FELON.  I ASK YOUR HONOR TO

11  TAKE INTO CONSIDERATION THE FACT THAT THE IMMENSE

12  SUBSTANTIVE PUNISHMENT THAT MR. MILLER HAS ALREADY

13  EXPERIENCED IN THE SENTENCE THAT YOU CARVE.

14          I MENTIONED IN MY SENTENCING MEMO THAT

15  FRANKLY, JUDGE, MY CLIENT HAS NOW BEEN INFORMED BY EVERY

16  BANK WHICH HE HAS HAD AN EXEMPLARY RELATIONSHIP WITH

17  THROUGHOUT HIS LIFETIME THAT HE CAN NO LONGER HAVE AN

18  ACCOUNT IN HIS NAME AND NO LONGER ANY BUSINESS IN WHICH

19  HE HAS AN OWNERSHIP INTEREST COULD HE BE A SIGNATURE OF.

20          AND THIS IS A RESULT OF THE REPORTING OF

21  THE BANK SECRECY ACT VIOLATION THAT COMES BEFORE YOUR

22  HONOR, I WOULD ASK YOU TO CONSIDER THAT AS WELL.  FOR

23  ALL THOSE REASONS, JUDGE, IT IS THE DEFENSE'S PLEA,

24  QUITE FRANKLY, CONSONANT WITH THE PLEAS AND THE 16

25  LETTERS THAT HUMBLY -- THEY SAY A WHOLE LOT BETTER THAN

1    I CAN, THAT YOUR HONOR IMPOSE A PUNISHMENT OF PROBATION.

2    AND THAT WE HAVE NO OBJECTION, JUDGE, TO THE IMPOSITION

3    OF A MAXIMUM $5,000 FINE.   THANK YOU, YOUR HONOR.

4              THE COURT:  MS. MARINARI, YOU MIGHT WANT

5    TO ASK YOUR AGENT IF YOU DON'T KNOW, IS THAT TRUE THAT

6    BECAUSE OF THIS VIOLATION HE CAN NO LONGER HAVE A BANK

7    ACCOUNT IN HIS OWN NAME?

8              MS. MARINARI:  JUDGE, I REALLY QUESTION

9    THAT.  THAT IS NOT MY UNDERSTANDING.  I CERTAINLY DON'T

10   HAVE AN EXPERTISE IN THAT, BUT MAY I JUST HAVE ONE

11   MOMENT?

12             MR. FARRELL:  JUDGE, JUST SHARING, I

13   DON'T BELIEVE CERTAINLY THAT THAT IS A STATUTORY

14   OBLIGATION, BUT OBVIOUSLY IT IS DISCRETIONARY BY BANKS

15   AND OBVIOUSLY WITH THE IMPOSITION OF THE REGULATORY

16   SCHEME THAT EXISTS, I BELIEVE THAT THEY PROBABLY WITHOUT

17   CHALLENGE COULD DO THAT WITHIN THEIR DISCRETION,

18   ALTHOUGH I DON'T BELIEVE IT'S --

19             THE COURT:  SO WHEN YOU SAID THAT THAT

20   WAS A CONSEQUENCE, YOU SAID IT WAS A POSSIBILITY, YOU

21   MISSPOKE?

22             MR. FARRELL:  NO, JUDGE, HE HAS RECEIVED

23   THE LETTERS.  HE HAS RECEIVED THE LETTERS INFORMING HIM

24   THAT ALL OF THOSE ACCOUNTS HAVE BEEN CLOSED AND THAT HE

25   WOULD NOT BE PERMITTED TO HAVE AN ACCOUNT AT THE BANKS

1    THAT HE HAS HAD.

2              THE COURT: BANKS THAT HE HAS HAD?

3              MR. FARRELL: THAT'S CORRECT, JUDGE. I

4    DIDN'T MEAN TO OUTLINE IT ANY DIFFERENTLY THAN THAT.

5    THAT IS HE HAS RECEIVED NOTICE FROM EVERY BANK WHICH HE

6    HAS DEALT WITH THROUGHOUT HIS BUSINESS CAREER THAT THOSE

7    ACCOUNTS WILL BE CLOSED AND HE WOULD NOT BE PERMITTED TO

8    HAVE AN ACCOUNT IN THOSE BANKS THAT HE WAS A SIGNATURE

9    ON, EITHER PERSONALLY OR THROUGH HIS BUSINESSES.

10             NOW, OBVIOUSLY, JUDGE, HE IS GOING TO

11   CONTINUE TO PURSUE THE POSSIBILITY OF, YOU KNOW,

12   ULTIMATELY PERSUADING THE BANK TO ALLOW HIM TO HAVE

13   CERTAINLY AT LEAST A PERSONAL ACCOUNT. WITH RESPECT TO

14   THE BUSINESS ACCOUNTS, THERE IS PROBABLY SOME THINGS

15   THAT CAN BE DONE THAT CAN AVOID HIM FROM HAVING TO BE A

16   SIGNATURE AND AVOID THAT CONSEQUENCE.

17             MS. MARINARI: JUDGE, I CHECKED WITH

18   SPECIAL AGENT FRANCIS MAZE WHO WAS ONE OF THE CASE

19   AGENTS ON THIS, HE IS WITH THE OIG'S OFFICE OF THE FDIC

20   AND HE INFORMS ME, SAID I AM CORRECT, THERE IS NO

21   STATUTORY -- IT IS STRICTLY UP TO THE BANKS.

22             THE COURT: MR. MILLER, COME ON UP HERE.

23   BY THE COURT:

24   Q.    DID YOU GRADUATE FROM HIGH SCHOOL?

25   A.    YES.

1    Q.        THAT WAS THE END OF YOUR FORMAL EDUCATION?

2    A.        THAT'S CORRECT.

3    Q.        I SAY FORMAL.

4    A.        CLASSROOM EDUCATION.

5    Q.        RIGHT.  BECAUSE YOU HAVE BEEN PRETTY SUCCESSFUL.

6    WHAT DID YOU DO BETWEEN 1979 AND 1989?

7    A.        1979.  CAN I BREAK THAT UP A LITTLE BIT?  FROM

8    1979 TO 1987 -- I'M SORRY, '86 I DID PROBABLY 20

9    DIFFERENT JOBS, NOTHING REALLY STUCK, DIFFERENT JOBS.  I

10   STARTED SEVERAL DIFFERENT BUSINESSES.

11              IN '86, NOVEMBER OF '86 WHEN I MET MY

12   WIFE, I GOT A JOB AT A MORTGAGE COMPANY, A BANK MORTGAGE

13   COMPANY MERGER CALLED CENLAR FEDERAL SAVINGS BANK AT THE

14   TIME.

15   Q.        THAT IS HOW YOU GOT INTO THE FINANCIAL STUFF?

16   A.        THAT'S CORRECT, YOUR HONOR.

17   Q.        WHAT WERE THE OTHER BUSINESSES BEFORE THAT?

18   A.        WHAT WERE THEY?

19   Q.        GENERALLY?

20   A.        ANYTHING I COULD FIND.  ANYTHING FROM CARRYING

21   BAGS AT THE SUPERMARKETS TO THE CAR FOR OLD LADIES, TO

22   STARTING A NEWSPAPER, TO SELLING PRETZELS ON THE STREET,

23   TO WORKING AT DIFFERENT STORES, I PROBABLY COULD NOT

24   EVEN REMEMBER ALL THE DIFFERENT THINGS.  I USED TO SELL

25   COINS AND ALL KINDS OF STUFF.

1    Q.    SO YOU WERE AN ENTREPRENEUR?

2    A.    I WAS HUNGRY.

3    Q.    YOU GOT THE MORTGAGE BROKER'S JOB?

4    A.    THAT'S CORRECT.

5    Q.    AND THAT INTRODUCED YOU TO THE FINANCIAL FIELD?

6    A.    THAT'S CORRECT.

7    Q.    YOU LEARNED HOW TO DEVELOP REAL ESTATE, IS THAT

8    IT?

9    A.    YES.

10   Q.    WHAT ARE THESE OTHER BUSINESSES THAT YOU WERE IN

11   AFTER '89?

12   A.    THEY WERE ALL REAL ESTATE OR FINANCIAL SERVICE

13   RELATED BUSINESSES, EQUIPMENT LEASING, TAX LIENS, AUTO

14   FINANCE, DIFFERENT REAL ESTATE PROJECTS, DIFFERENT TITLE

15   COMPANIES, DIFFERENT MORTGAGE COMPANIES, ALL FINANCIAL

16   SERVICE REAL ESTATE RELATED.

17   Q.    AND YOUR ONE BROTHER WAS IN THAT BUSINESS, WAS

18   IN SOME OF THOSE BUSINESSES WITH YOU?

19   A.    THAT'S CORRECT.

20   Q.    YOU LIST TWO FLORIDA PROPERTIES AS BEING

21   RESIDENCES?

22   A.    ONE IS -- I DON'T KNOW WHAT IT SAID, ONE IS A

23   RESIDENCE WHERE I LIVE, THE OTHER IS JUST A RENTAL

24   PROPERTY.

25   Q.    SO IT'S AN INVESTMENT PROPERTY?

1    A.    YES.

2    Q.    THAT DID NOT APPEAR LIKE THAT.

3    A.    JUST FOR THE RECORD, I LIVE AT 175 -- OKAY.

4    Q.    I CLARIFIED THAT.

5    A.    THAT'S FINE.

6    Q.    YOU STILL MAINTAIN A PENNSYLVANIA RESIDENCE?

7    A.    THAT'S CORRECT.

8    Q.    WHAT ARE THESE FIVE JUDGMENTS THAT HE TALKS

9    ABOUT?

10   A.    SEVERAL YEARS AGO WHEN THE MARKET MELT DOWN, THE

11   MAIN COMPANY WHICH I OWNED GELT FINANCIAL HAD TO FILE

12   BANKRUPTCY AND IT WAS A RESULT -- AT ONE POINT WE HAD

13   $25 MILLION, MAYBE EVEN $30 MILLION WORTH OF JUDGMENTS

14   AGAINST US.  SINCE THEN MOST OF THEM HAVE BEEN CLEANED

15   UP AND/OR SETTLED OR RESOLVED.

16   Q.    THROUGH THE BANKRUPTCY PROCEEDINGS?

17   A.    ACTUALLY SOME THREW SOME OUT.  BUT CAN I JUST

18   CLARIFY THAT, YOUR HONOR?

19           THEY HAVE ALL BEEN PAID.  EVEN IF IT WAS

20   THROUGH THE BANKRUPTCY, IT WAS THROUGH A CONFIRMED PLAN.

21   Q.    BUT THERE ARE STILL FIVE OUTSTANDING JUDGMENTS?

22   A.    I'M NOT SURE.  WHEN I SAW THE LIST I KNOW I HAVE

23   RELEASES ON A COUPLE OF THEM, BUT A COUPLE OF THEM

24   -- LET ME BACK UP.  I BELIEVE WE HAVE RELEASES ON ALL OF

25   THEM, BUT A COUPLE OF THEM DID NOT HIT THE COURTHOUSE

1     YET.

2     Q.      SO THE JUDGMENTS ARE NOT AGAINST YOU PERSONALLY?

3     A.      NO, NO, NO, NO, THEY WERE.

4     Q.      AS A GUARANTOR?

5     A.      THAT'S CORRECT.

6     Q.      WHAT DO YOU WANT TO TELL ME?

7     A.      I KNOW THERE WAS A LITTLE CONFUSION, I DON'T SAY

8     CONFUSION IN TERMS OF MY STATEMENTS AND I WANTED TO TELL

9     THE COURT THAT I AM EMBARRASSED, I APOLOGIZE AND I'M

10    SHAMEFUL FOR THE OUTCOME OF PUBLIC.  IT CERTAINLY WAS

11    NOT ANYONE'S INTENT FOR IT.  BUT I'M DEEPLY REMORSEFUL

12    TO THE EMPLOYEES, TO THE CUSTOMERS, TO THE REGULATORS,

13    TO THE COURT, TO THE CITIZENS OF THE COUNTRY FOR THE

14    OUTCOME OF PUBLIC THROUGH ANY ACTIONS THAT I DID.  I DID

15    NOT WANT YOU TO THINK THAT I WASN'T -- I WAS BACKING OFF

16    MY EARLIER STATEMENTS.

17    Q.      YOUR FAILURES, RIGHT?

18    A.      PARDON ME?

19    Q.      MORE YOUR FAILURES THAN YOUR ACTIONS, RIGHT?

20    A.      LOT OF FAILURES, LOT OF POOR DECISIONS TO BE

21    CANDID WITH YOUR HONOR, IN RETROSPECT.

22    Q.      DO YOU THINK YOU ARE EQUIPPED TO BE A BANKER?

23    A.      NO.

24    Q.      WHAT DO YOU THINK AN APPROPRIATE SENTENCE SHOULD

25    BE?

1    A.      I AM PROBABLY NOT A FAIR ONE TO ASK, YOUR HONOR.

2    I DON'T THINK I CAN ANSWER THAT WITH ALL SINCERITY AT

3    THIS TIME.

4    Q.      REALLY?  YOU DON'T WANT TO GO TO JAIL, DO YOU?

5    A.      NO.

6    Q.      WELL, WOULD YOU SAY AN APPROPRIATE SENTENCE

7    WOULD BE NONCUSTODIAL?

8    A.      I WOULD THINK SO.

9    Q.      WE ARE GETTING SOMEWHERE THEN.

10   A.      I WILL THINK THE LEAST POSSIBLE SENTENCE.

11   Q.      NOW THAT IS HONEST.

12           I HAVE READ ALL OF THE LETTERS THAT WERE

13   SUBMITTED TO ME AND YOUR FAILURES IN THIS CASE ARE

14   REALLY ABERRANT.  AND IT'S OBVIOUS THAT YOU HAVE DONE A

15   LOT OF GOOD AND THAT WILL NOT STOP, WILL IT?

16   A.      THE GOOD?  NOT AS LONG AS I'M ALIVE.  IT'S

17   WITHIN ME.

18   Q.      SERVICE IS?

19   A.      I DON'T VIEW IT THAT -- I VIEW IT AS SORT OF AN

20   OBLIGATION OR I VIEW IT AS I -- AS I SAY WHEN PEOPLE

21   THANK ME, I SAID THE BACK DOES NOT THANK THE ARM FOR

22   SCRATCHING IT.  IT'S JUST PART OF WHAT WE DO.

23           THE COURT:  ANYTHING COUNSEL WANT TO SAY?

24           MR. FARRELL:  NO, YOUR HONOR.

25           MS. MARINARI:  NO, YOUR HONOR.

Case 2:13-cr-00445-TJS  Document 20-5  Filed 07/23/15  Page 51 of 71
Case 9:15-tp-80019-DMM-JS  Document 2  Entered on FLSD Docket 12/30/2015  Page 51 of 71

23

1                THE COURT:  IN DETERMINING WHAT SENTENCE

2     TO IMPOSE IN THIS CASE, I TAKE INTO CONSIDERATION ALL

3     THE FACTORS SET FORTH IN 18 UNITED STATES CODE, SECTION

4     3553(A) AND AMONG THOSE ARE THE NATURE AND CIRCUMSTANCES

5     OF THE OFFENSE.

6                HERE WE HAVE A DEFENDANT WHO IS THE OWNER

7     AND CEO OF A PUBLIC SAVINGS BANK WHO FAILED TO IMPLEMENT

8     PROCEDURES MANDATED BY THE BANK SECRECY ACT.  AS A

9     RESULT OF HIS FAILURES, DRUG PROCEEDS WERE CONCEIVABLY

10    LAUNDERED THROUGH THE BANK.  WHEN HE WAS ADVISED BY THE

11    FDC AND THE PENNSYLVANIA DEPARTMENT OF BANKING TO

12    APPOINT A COMPLIANCE OFFICER, HE NAMED AN INADEQUATELY

13    TRAINED PERSON.

14                IT CERTAINLY WAS NOT DONE INTENTIONALLY.

15    IT WAS NOT DONE TO FACILITATE THE DEPOSITING OF DRUG

16    PROCEEDS, NOR OF MONEY LAUNDERING, BUT RATHER BY AN

17    INEXPERIENCED PERSON WHO WAS SERVING AT A LEVEL ABOVE

18    HIS COMPETENCE.

19                I LOOK AT THE HISTORY AND CHARACTERISTICS

20    OF THE DEFENDANT.  I SEE A 52-YEAR OLD MAN WITH A HIGH

21    SCHOOL DIPLOMA, WHO ROSE TO BE THE CEO AND PRINCIPAL

22    SHAREHOLDER OF A BANK.  BUT BEFORE THAT, HE HAD BEEN

23    VERY SUCCESSFUL IN THE FINANCIAL AND REAL ESTATE FIELD.

24    HE WAS RAISED IN A STABLE, LOVING FAMILY ENVIRONMENT IN

25    NORTHEAST PHILADELPHIA.  HE IS MARRIED WITH THREE ADULT

1    CHILDREN.  HE IS A DEVOTED SPOUSE AND FATHER.  HIS

2    FAMILY IS THE CENTER OF HIS UNIVERSE.

3              ASIDE FROM HIGH CHOLESTEROL, HIGH BLOOD

4    PRESSURE AND BACK PAIN, HE HAS NO REMARKABLE PHYSICAL

5    HEALTH ISSUES.  HE HAS NO MENTAL OR EMOTIONAL HEALTH

6    ISSUES OTHER THAN THOSE THAT MIGHT BE ASSOCIATED WITH

7    THE ANXIETY AND TENSION IN CONNECTION WITH THIS OFFENSE

8    AND WHAT HAS HAPPENED TO HIM IN TERMS OF HIS REPUTATION.

9              HE DOES NOT ABUSE ALCOHOL OR DRUGS.  HE

10   IS ENGAGED IN A HISTORY OF PHILANTHROPIC ACTIVITIES, NOT

11   ONLY CONTRIBUTING FINANCIALLY BUT ALSO VOLUNTEERING HIS

12   TIME AND DOING SO WITHOUT ANY SENSE OF ADULATION.  HE

13   HAS PLEADED GUILTY, DID NOT REQUIRE THE SUBMISSION OF

14   HIS CASE TO THE GRAND JURY AND ALLOWED THE PROCEEDINGS

15   TO GO BY WAY OF INFORMATION.  HE HAS NO PRIOR CRIMINAL

16   RECORD.  UNLIKE HARD CORE CRIMINALS, HE WAS A MAN WHO

17   HAD A STELLAR REPUTATION WHICH NOW HAS BEEN TARNISHED.

18   THE HUMILIATION THAT HE HAS SUFFERED, THE UNCERTAINTY OF

19   HIS FUTURE, ALL CONSTITUTE PUNISHMENT THAT ARE NOT AT

20   ALL FACTORED INTO THE SENTENCING GUIDELINE RANGE.

21             I LOOK AT THE NEED TO IMPOSE A SENTENCE

22   THAT REFLECTS THE SERIOUSNESS OF THE OFFENSE AS I HAVE

23   DESCRIBED IT AND TO PROMOTE RESPECT FOR THE LAW AND TO

24   AFFORD DETERRENCE.

25             THE MERE FACT THAT ONE WHO HAS A

Case 9:15-tp-80013-DMM   Document 2   Entered on FLSD Docket 01/13/2016   Page 53 of 71
Case 2:13-cr-00445-TJS   Document 20-5   Filed 07/23/15   Page 26 of 29

25

1    REPUTATION SUCH AS MR. MILLER ENJOYED AND HAS BEEN

2    SUCCESSFUL IN BUSINESS KNOWS THAT AN ARREST AND A

3    CONVICTION IN AND OF THEMSELVES WITHOUT REGARD TO THE

4    EXTENT OF THE PUNISHMENT ARE INDEED SOMETHING TO BE

5    AVOIDED THEREFORE PROVIDING RESPECT FOR THE LAW AND

6    AFFORDING DETERRENCE.

7            WHEN I LOOK AT THE NEED TO PROTECT THE

8    PUBLIC FROM THE DEFENDANT'S FURTHER CRIMES, I REALIZE

9    THAT THIS DEFENDANT WILL NOT COMMIT ANOTHER CRIME, AND

10   THERE IS NO THREAT TO THE PUBLIC.

11           THERE IS NOTHING THAT WE CAN PROVIDE BY

12   EDUCATIONAL OR VOCATIONAL TRAINING IN THIS PARTICULAR

13   CASE.  I LOOK AT THE KINDS OF SENTENCES THAT ARE

14   AVAILABLE, THE SENTENCING RANGES RECOMMENDED AND THE

15   PERTINENT POLICY STATEMENTS ISSUED BY THE SENTENCING

16   COMMISSION.

17           I ALSO LOOK AT THE NEED TO AVOID

18   UNWARRANTED SENTENCE DISPARITIES AMONG DEFENDANTS WITH

19   SIMILAR RECORDS WHO HAVE BEEN FOUND GUILTY OF SIMILAR

20   CONDUCT.  WHEN I LOOK AT THAT FACTOR, I HAVE TO CONSIDER

21   THAT THERE ARE THOSE WHO COULD HAVE BEEN CONVICTED OF

22   THIS PARTICULAR OFFENSE WHO INTENDED TO AVOID THE

23   REQUIREMENTS OF THE BANK SECRECY ACT.  BUT IN THIS

24   PARTICULAR CASE, THIS DEFENDANT DID NOT HAVE SUCH AN

25   INTENTION AND TO SENTENCE HIM TO A SAME SENTENCE AS ONE

Case 9:15-tp-80013-DMM   Document 2   Entered on FLSD Docket 01/13/2016   Page 54 of 71
Case 2:13-cr-00445-TJS   Document 20-5   Filed 07/23/15   Page 27 of 29

26

1      WHO DID WOULD BE UNFAIR AND WOULD BE DISPARATE.

2                    I ALSO CONSIDER HIS REMORSE AND HIS

3      ACCEPTANCE OF RESPONSIBILITY.   THEREFORE, THE DEFENDANT

4      SHALL PAY TO THE UNITED STATES A SPECIAL ASSESSMENT OF

5      $200 WHICH SUM SHALL BE DUE IMMEDIATELY AND SHALL PAY A

6      FINE IN THE AMOUNT OF $5,000 WITHIN TEN DAYS.   AND THE

7      DEFENDANT IS PLACED ON PROBATION FOR A PERIOD OF THREE

8      YEARS.   JURISDICTION AND SUPERVISION SHALL BE

9      TRANSFERRED TO THE SOUTHERN DISTRICT OF FLORIDA.

10                    DO YOU UNDERSTAND THE SENTENCE?

11                    THE DEFENDANT:   I BELIEVE I DO, YOUR

12     HONOR.

13                    THE COURT:   WHAT IS IT?

14                    THE DEFENDANT:   THREE YEARS PROBATION AND

15     I THINK IT WAS $5,250 FINE.

16                    THE COURT:   ANYTHING FROM THE GOVERNMENT?

17                    MS. MARINARI:   NO, YOUR HONOR.

18                    THE COURT:   MR. FARRELL?

19                    MR. FARRELL:   YOUR HONOR, THERE IS A

20     REQUEST, FRANKLY NOT NECESSARILY TO TRAVEL OUTSIDE THE

21     UNITED STATES, BUT MY CLIENT IS ASKING FOR THE RETURN OF

22     HIS PASSPORT, PARTICULARLY JUST A PERSONAL REQUEST.

23                    THE COURT:   WHAT IS YOUR POSITION?   I

24     DON'T HAVE A PROBLEM WITH IT, BUT I DON'T KNOW THAT IF

25     WE ARE GOING TO HAVE JURISDICTION, WHETHER I SHOULD

Case 9:15-tp-80012-DMM  Document 2  Entered on FLSD Docket 01/13/2016  Page 55 of 71
Case 2:13-cr-00445-TJS  Document 20-5  Filed 07/23/15  Page 28 of 29

27

1    LEAVE THAT UP TO THE SOUTHERN DISTRICT.

2                    MR. FARRELL:  IT WAS A CONDITION OF

3    PROBATION, JUDGE, OUT OF THIS DISTRICT.

4                    THE COURT:  MR. FARRELL, I UNDERSTAND.  I

5    DON'T HAVE A PROBLEM WITH IT, I WOULD GIVE IT BACK TO

6    HIM.  BUT IF I'M GOING TO TRANSFER THE JURISDICTION TO A

7    JUDGE IN FLORIDA, THAT JUDGE CAN MAKE THE CALL, NOT

8    MINE.  HE IS NOT GOING TO BE UNDER MY SUPERVISION.  I

9    DON'T THINK HE IS GOING TO BE A PROBLEM UNDER

10   SUPERVISION, PERIOD.

11                   DO YOU WANT TO GIVE HIM HIS APPELLATE

12   RIGHTS?

13                   MR. FARRELL:  YES.  MR. MILLER, YOU HAVE

14   NOW BEEN SENTENCED BY HIS HONOR TO A PERIOD OF THREE

15   YEARS PROBATION, AND AS YOU INDICATED FINED AND

16   MANDATORY PENALTIES OF $5,200.  DO YOU UNDERSTAND YOUR

17   SENTENCE?

18                   THE DEFENDANT:  YES.

19                   MR. FARRELL:  YOU HAVE A PERIOD OF

20   14 DAYS IN WHICH TO FILE A NOTICE OF APPEAL TO THE U.S.

21   COURT OF APPEALS FOR THE THIRD CIRCUIT.  I HAVE BEEN

22   RETAINED.  IF YOU ASK ME TO DO SO, I WOULD, ALTHOUGH

23   WE'VE ALREADY DISCUSSED THAT AND IN LIGHT OF ULTIMATELY

24   THE PROCEEDINGS AT PRESENT, THAT IS NOT YOUR PRESENT

25   REQUEST?

Case 2:13-cr-00445-TJS   Document 20-5   Filed 07/23/15   Page 29 of 29

28

```
1                    THE DEFENDANT:  THAT'S CORRECT.

2                    MR. FARRELL:  BUT DO YOU UNDERSTAND YOUR

3    APPELLATE RIGHTS?

4                    THE DEFENDANT:  YES.

5                    THE COURT:  VERY WELL.  THANK YOU ALL.

6                    MR. FARRELL:  THANK YOU, YOUR HONOR.

7    THAT WILL CONCLUDE MY BUSINESS, YOUR HONOR, MAY I BE

8    EXCUSED?

9                    MS. MARINARI:  THANK YOU, YOUR HONOR.

10                   (COURT ADJOURNED.)

11                   I CERTIFY THAT THE FOREGOING IS A CORRECT

12   TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13   ABOVE-ENTITLED MATTER.

14

15

16   DATE                    SUZANNE R. WHITE

17                           OFFICIAL COURT REPORTER

18

19

20

21

22

23

24

25
```

# EXHIBIT F

Case 9:15-tp-80013-DMM   Document 2   Entered on FLSD Docket 01/13/2016   Page 58 of 71
Case 2:13-cr-00445-TJS   Document 21   Filed 07/28/15   Page 1 of 1
Case 9:15-tp-80013-DMM   Document 1   Entered on FLSD Docket 03/27/2015   Page 1 of 14

PROB 22
(Rev. 2/88)

**TRANSFER OF JURISDICTION**

FILED

JUL 2 8 2015

MICHAEL E. KUNZ, Clerk
By _____ Dep. Clerk

| | |
|---|---|
| CASE NUMBER *(Tran. Court)* | 2:13CR000445-001 |
| CASE NUMBER *(Rec. Court)* | 15-80013-TP- |

NAME AND ADDRESS OF PROBATIONER/SUPERVISED RELEASEE:

Jack H. Miller

Boca Raton, FL

FILED by _____ D.C.

MAR 27 2015

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

| DISTRICT | DIVISION |
|---|---|
| Eastern District of Pennsylvania | Philadelphia MIDDLEBROOKS |

NAME OF SENTENCING JUDGE

**The Honorable Timothy J. Savage**

| DATES OF PROBATION/SUPERVISED RELEASE: | FROM 07/01/2014 | TO 06/30/2017 |
|---|---|---|

OFFENSE

31:5318(h) and 5322(a), Willful failure to maintain an effective anti-money laundering program (Count One) and 31:5318(g) and 5322(a), Willful failure to file suspicious activity report (Count Two).

**PART 1 - ORDER TRANSFERRING JURISDICTION**

UNITED STATES DISTRICT COURT FOR THE **Eastern District of Pennsylvania.**

   IT IS HEREBY ORDERED that pursuant to 18 U.S.C. 3605 the jurisdiction of the probationer or supervised releasee named above be transferred with the records of the Court to the United States District Court for the **Southern District of Florida** upon that Court's order of acceptance of jurisdiction. This Court hereby expressly consents that the period of probation or supervised release may be changed by the District Court to which this transfer is made without further inquiry of this Court.*

_September 17, 2014_
Date

_____
United States District Judge

*This sentence may be deleted in the discretion of the transferring Court.

**PART 2 - ORDER ACCEPTING JURISDICTION**

UNITED STATES DISTRICT COURT FOR THE **Southern District of Florida.**

   IT IS HEREBY ORDERED that jurisdiction over the above-named probationer/supervised releasee be accepted and assumed by this Court from and after the entry of this order.

_2/18/15_
Effective Date

_____
United States District Judge

**EXHIBIT G**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| V. | : | Criminal No.  13-445 (TJS) |
| | : | |
| H. JACK MILLER | : | |
| | : | |

### ORDER

THIS MATTER having been presented to the Court by Motion for Early Termination of Probation by J. Michael Farrell, Esquire, attorney for the Defendant, and the Government having been represented by Assistant United States Attorney Terri Marinari, and for good cause shown;

IT IS on this _____ day of _____, 2015 HEREBY ORDERED and DECREED that Defendant's Motion for Early Termination of Probation is GRANTED.

BY THE COURT:

_____
Timothy J. Savage, U.S.D.C.J.

J. MICHAEL FARRELL, TRIAL LAWYER
ATTY. ID. NO. 33803
718 ARCH STREET
SUITE 402N
PHILADELPHIA, PA 19106
(215) 925-1105
(609) 937-8836
*mike@farrelltrial.com*

*ATTORNEY FOR DEFENDANT*


## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| V. | : | Criminal No. 13-445 (TJS) |
| | : | |
| H. JACK MILLER | : | |
| | : | |

## MOTION FOR EARLY TERMINATION OF PROBATION

NOW COMES, Defendant, H. Jack Miller, by J. Michael Farrell, Esquire, his attorney,

and moves this Court for early termination of probation, and in support thereof states as follows:

1. On October 7, 2013, Defendant entered a guilty plea to willful failure to maintain an

effective anti-money laundering program and willful failure to file a suspicious activity report in

violation of Title 31 Sections 5318(h) and 5322(a) and Title 31 Sections 5318(g) and 5322(a),

respectively.

2. On July 1, 2014, the Defendant was sentenced to probation for a term of three (3)

years. In addition, the Defendant was to pay a special assessment of $200 and a fine in the

amount of $5,000.00. See Judgement of Sentence attached hereto as Exhibit "A."

3. The Defendant fully satisfied his special assessment and fine in a timely manner. See copy of the Praecipe to Satisfy Financial Judgment attached hereto as Exhibit "B".

4. The Defendant's probation was transferred from the U.S. District Court for the Eastern District of Pennsylvania to the U.S. District Court for the Southern District of Florida.

5. The Defendant, in all respects, has fully complied with his probation without incident.

6. The Defendant has now completed more than one (1) year of his probation.

7. My client has suffered an avalanche of additional punishment in the form of collateral consequences from his instant conviction which will be further outlined, *supra*.

8. As the Court is aware, Gelt Financial, Inc. and Gelt Properties, LLC had sought protection under Chapter 11 of the Bankruptcy Code. They are companies that the Defendant founded in February of 1989 and was the majority owner. He served as President and CEO and shepherded the companies through success and the challenges of the bankruptcy process to survive, subsequent to our nation's economic downfall.

9. When the Bankruptcy Plan, satisfying all creditors dollar for dollar, was about to be approved by the Bankruptcy Judge, the U.S. Trustee overseeing the case, an employee of the Department of Justice, required that Defendant resign from being an officer as well as a board member due to the instant plea.

10. For over 20 years, the Defendant loved and worked day and night for the companies and, as a result of the instant conviction, can no longer participate in decision-making. In addition, it should be noted that his resignation was required after he agreed to be a personal guarantor on about a $15,000,000.00 debt. Therefore, the Defendant is personal responsible for the debt but, because of the instant conviction, can have no participation in the business decision-making.

11. Moreover, without warning, on July 8, 2014, PNC Bank, a bank that the Defendant's companies had been dealing with for over five (5) years sent certified letters indicating that, because Defendant was a signer on the accounts and in light of the instant conviction, the bank was giving the companies thirty days to close them. This included Defendant's personal accounts. See copies of said letters attached hereto as Exhibit "C". Contact was made with the bank, but they indicated that they could not provide any information.

12. Additionally, on April 27, 2015, Santander Bank, with whom the companies also had accounts, sent similar correspondence requiring the closing of accounts on which Defendant was a signer. See copies of those letters attached hereto as Exhibit "D".

13. All of the accounts were in compliance and had performed perfectly. On most of the companies, the Defendant was one (1) of three (3) signers as well the managing member or owner. The banking relationships of these companies are complex. For example, the companies use an Automatic Clearing House ("ACH") for both tenants' and borrowers' accounts for the purpose of making payments to banks and other vendors through automatic electronic payments. Suffice it to say, setting up new accounts would be an extraordinary nightmare that would take months and would be extremely costly. The ultimatum gave the Defendant no choice but to resign his positions in order that the companies could maintain their banking relationships.

14. Further, 1265 Industrial Boulevard, LLC is a company that the Defendant started and which owns two (2) commercial properties. The Defendant was its managing member, guarantor of its debt, and the majority owner through Gelt Holdings, Inc. As a result of the above-described banking situations, the Defendant was forced to resign as a member of management, again being responsible for debt but having no participation in management.

15. Moreover, Westerly Hills Shopping Center is a partnership that owns a 93,000 square foot retail center in Charlotte, North Carolina. The Defendant is a managing member of this partnership as well as through Gelt Holdings, Inc., its majority owner. It was necessary to refinance the property so the LLC applied and was approved for a loan with CitiBank. On the eve of closing, CitiBank informed that they would not do the loan if the Defendant remained a managing member of the LLC due to his guilty plea in the instant matter. Again, the Defendant was forced to resign from the LLC, surrendering to at least one (1) of the partners greater interest, control and leverage than said partner would otherwise have had but for this ultimatum.

16. In summary, the Defendant has been locked out of America's financial system both as a depositor, borrower and business manager. It is difficult to imagine how the Defendant whose lifelong vocation has been as a businessman can survive or do any productive work in the future.

17. The above-described collateral consequences of the instant plea have been brought to the attention of the Court and it is requested that the Court consider them for the full picture of the punishment which the Defendant experienced as a result of this instant conviction.

18. To further assist the Court, a copy of the sentencing transcript has been attached hereto as Exhibit "E".

19. The Defendant has fully satisfied all of his economic obligation under the sentence and has been an exemplary probationer.

WHEREFORE, for the foregoing reasons, it is requested that this Court consider and order early termination of Defendant's probation forthwith.

Respectfully submitted,

Dated: 7/23/15

J. MICHAEL FARRELL, ESQUIRE
Attorney for Defendant, H. Jack Miller

**J. MICHAEL FARRELL, TRIAL LAWYER**
**ATTY. ID. NO. 33803**
**718 ARCH STREET**
**SUITE 402N**
**PHILADELPHIA, PA 19106**
**(215) 925-1105**
**(609) 937-8836**
*mike@farrelltrial.com*

*ATTORNEY FOR DEFENDANT*


### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| V. | : | Criminal No.  13-445 (TJS) |
| | : | |
| H. JACK MILLER | : | |

### CERTIFICATE OF SERVICE

I hereby certify that, on this 23rd day of July, 2015, a true and correct copy of the

foregoing Motion for Early Termination of Probation has been sent via email and first class mail,

postage pre-paid, to the following:

Terri Marinari, Esquire
Assistant United States Attorney
United States Attorney's Office
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106-4476
terri.marinari@usdoj.gov

Jacqueline Widmeier, U.S. Probation Officer
United States District Court, Eastern District of PA
Federal Office Building
600 Arch Street, Suite 2400
Philadelphia, PA 19106-1679
jacqueline_widmeier@paep.uscourts.gov

Andrea Boone, U.S. Probation Officer
United States District Court, Southern District of FL
501 S Flagler Drive, Suite 400
West Palm Beach, FL 33401
andrea_boone@flsp.uscourts.gov

J. MICHAEL FARRELL, ESQUIRE
Attorney for Defendant, H. Jack Miller

**EXHIBIT H**

Case 2:13-cr-00445-TJS Document 22 Filed 07/30/15 Page 1 of 1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
|---|---|---|
| | : | |
| v. | : | NO. 13-445 |
| | : | |
| H. JACK MILLER | : | |

## <u>ORDER</u>

**AND NOW**, this 29th day of July, 2015, upon consideration of the Motion for Early Termination of Probation (Document No. 20) and jurisdiction over the defendant having been transferred to the United States Court for the Southern District of Florida, it is **ORDERED** that the motion is **TRANSFERRED** to the United States District Court for the Southern District of Florida at Case No. 15-80013-TP-Middlebrooks.

                                      __/s/Timothy J. Savage_____
                                      TIMOTHY J. SAVAGE,  J.

**J. MICHAEL FARRELL, ESQUIRE**
**FARRELL DUFFY**
**718 ARCH STREET**
**SUITE 402N**
**PHILADELPHIA, PA 19106**
**(215) 925-1105**
**(609) 937-8836**
**mike@farrellduffy.com**

### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF FLORIDA

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **V.** | : | **Criminal No.  15-80013-TP-Middlebrooks** |
| | : | |
| **H. JACK MILLER** | : | |
| | : | |

### CERTIFICATE OF SERVICE

I hereby certify that, on this 12th day of January, 2016, a true and correct copy of the

foregoing Motion for Early Termination of Probation has been sent via email and first class mail,

postage pre-paid, to the following:

United States Attorney's Office
500 S. Australian Ave.
Ste. 400
West Palm Beach, FL 33401

Andrea Boone, U.S. Probation Officer
United States District Court, Southern District of FL
501 S Flagler Drive, Suite 400
West Palm Beach, FL 33401
andrea_boone@flsp.uscourts.gov

Terri Marinari, Esquire
Assistant United States Attorney
United States Attorney's Office
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106-4476
terri.marinari@usdoj.gov

Jacqueline Widmeier, U.S. Probation Officer
United States District Court, Eastern District of PA
Federal Office Building
600 Arch Street, Suite 2400
Philadelphia, PA 19106-1679
jacqueline_widmeier@paep.uscourts.gov

J. MICHAEL FARRELL, ESQUIRE
Attorney for Defendant, H. Jack Miller